IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ROBERT DEVINE                                                          PLAINTIFF

VS.                              Civil No. 4:18-CV-04156 SOH-BAB

JEFFIE WALKER, WARDEN
JACKIE RUNION, SHERIFF
ALLAN SANDERS, SERGEANT                                DEFENDANTS

STEVEN KING, NURSE                                             DEFENDANT

### Combined Brief In Opposition to Both Summary Judgment Motions

Comes now, Robert Devine, in this cause of action brought by him under 42 U.S. § 1983 by and through his lead attorney, DeeAnna Weimar, and co-counsel, Alexander Wyrick, responding en masse to the motions for summary judgment, supporting briefs, and affidavits from Defendants Walker, Runion, and Sanders, a/k/a, Miller County Defendants, and Separate Defendant King, of Southern Health Partners, Inc., a contractor with Miller County Detention Center, writing pursuant to Federal Rules of Civil Procedure R 56.

## I.     Introduction

This brief accompanies Plaintiff's motion opposing summary judgment, statement of disputed facts, and affidavits. In this brief, Plaintiff addresses the facts and law presented in Miller County Defendants' motion for summary judgment and supporting brief and affidavits, as well as Defendant King's motion for summary judgment and supporting brief and affidavit.

A.    Factual background.

Plaintiff incorporates by reference the facts in his motion opposing summary judgment, statement of undisputed facts, and personal affidavit, which are filed in conjunction with this brief.

B.    Governing law.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition to this brief and accompanying motion, Mr. Devine has included a "short and concise statement of the material facts" which present a genuine dispute, ripe for litigation. Ark. W. Dist. Local Rule 56.1. "Summary Judgment is an extreme remedy, to be granted only when no genuine issue exists as to any material fact." *Moore v. Jackson*, 123 F.3d 1082, 1087 (8th Cir. 1997).

## II.    Summary judgment standard clarified: Certain defenses and affirmative defenses are inapplicable.

Miller County Defendants are estopped from arguing an affirmative defense exhaustion of administrative remedies because they have defended the merits of their case until now. Neither Miller County Defendants nor Defendant King are shielded in their individual or official capacities by qualified immunity because their conduct violated Plaintiff's statutory and constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution, and to correctional officers' duty to refrain from excessive force.

A.    Exhaustion of administrative remedies is an affirmative defense.

"The [Prisoner Litigation Reform Act] itself is not a source of a prisoner's claim; claims covered by the PLRA are typically brought under 42 U.S.C. § 1983, which does not require exhaustion at all." *Jones v. Bock*, 549 U.S. 199, 212 (2007) (citing, *Patsy v. Board of Regents of*

*Fla.*, 457 U.S. 496 (1982)). Even in claims not based on § 1983, courts also regard exhaustion as an affirmative defense. *Jones* 549 U.S. 212. See also, *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 75 (1998) ("failure to exhaust" referred to as an "affirmative defense").

"The PLRA's exhaustion requirement is an affirmative defense which must be pled and proven by the defense." *Woodard v. Greenway*, 2010 U.S. Dist. LEXIS 93694, at 22 (citing *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005).

    B.    <u>An affirmative defense, such as exhaustion, is akin to personal jurisdiction; therefore, Defendants waived any such defense by failing to plead it until summary judgment.</u>

"Exhaustion resembles personal jurisdiction and venue in that it is an affirmative defense that allows defendant to assert that plaintiffs have not invoked the proper forum for resolving a dispute." *Woodard*, 2020 U.S. Dist. LEXIS 253288; 2020 WL 9348486. The Supreme Court explains "the importance of drawing inferences in favor of the nonmovant" by highlighting "the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." *Tolan v. Cotton*, 572 U.S. 650 (2014).

The *Woodard* defendants properly pled their affirmative defense of failure to exhaust administrative remedies directly in their Answer.

Unlike the *Woodard* defendants, the Miller County Defendants waited more than three years and more than eighty documents into the life of this matter to raise their affirmative defense of exhaustion. (ECF No. 81, 86).

    **III.**    **Inapplicable defenses explained: Affirmative defense of exhaustion fails for both defendants, for separate reasons; qualified immunity fails for both defendants.**

Mr. Devine has made lengthy arguments throughout this matter using facts which are clearly genuinely disputed issues: (1) Miller County Defendants brutally beat him, (2) that he incurred injuries such as severe corneal abrasions because of the beating, (3) Miller County

Defendants sprayed pepper spray into is previously injured eye, (4) that, because of Defendant King's inaction, the resulting infection in Mr. Devine's eye eventually led to total blindness in that eye. (ECF No. 6).

A. <u>Miller County Defendants cannot prevail on an affirmative defense of exhaustion of administrative remedies at this stage of this litigation.</u>

Miller County Defendants' collective exhaustion arguments are therefore affirmative defenses, which must standardly be raised at the pleading stage or before defending on the merits without raising the affirmative defense. In their Answer, Miller County Defendants specifically alleged ten affirmative defenses, and a catch-all defense. (ECF No. 13). However, Defendants failed to include non-exhaustion of administrative remedies. It follows that, Miller County Defendants are now barred from raising an affirmative defense of exhaustion.

B. <u>Separate Defendant King's affirmative defense of exhaustion fails because the Miller County Detention Center's multi-step grievance procedure is not an "available" remedy.</u>

Under the tests and analysis explained by *Clay v. Correct Care, supra.*, Miller County Detention Center's grievance procedure is not an "available" remedy, which is narrowly defined by the Court as "capable of use." *Ross v. Blake*, 136 S. Ct. 1850, 1857, 195 L. Ed. 2d 117 (2015).

The Prisoner Litigation and Reform Act (PLRA) requires inmates to exhaust available grievance procedures in their prison before beginning litigation about some condition of that prison. 42 U.S.C. § 1997e(a). Inmates must "fully and properly comply with the specific exhaustion requirements of the incarcerating facility." *Clay v. Correct Care Sols., LLC*, 2017 U.S. Dist. LEXIS 95724.

In *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001), the court held that "a remedy that prison officials prevent a prisoner from 'utilizing' is not an 'available' remedy under § 1997e(a)."

In *Clay* 2017 LEXIS 95724, at 13, the Court looks to *Ross v. Blake*, 136 S. Ct. 1850,

1857; 195 L. Ed. 2d 117 (2015) for determining when administrative remedies are unavailable: First, "the prison grievance procedure operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" *Id.* Second, the administrative remedy policy is "so opaque that it becomes, practically speaking, incapable of use [such that] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. *Id.* Third, "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

The Definitions section in Miller County Defendants' policy SOP 09.01 (ECF No. 85-1) states that a "grievance can only be made subsequent to filing a written complaint and receiving a written response." (ECF No. 85-1). The complaint procedure is no small step; in fact, it is three long steps: (1) an inmate writing and submitting their complaint through the KIOSK, (2) a waiting period for an appropriate supervisor to review the complaint and write their response, (3) the supervisor ensuring delivery of the response to the inmate. Importantly, under MCDC policy, jail officials must automatically reject an inmate's grievance if submitted "without an original complaint and response." (ECF No. 85-1).

The relevant procedure at issue in our case is the Miller County Sheriff's Office, Detention Division, Inmate Rights, Complaints & Grievances SOP 09.01. The two most relevant sub-procedures are in Section E.4.a.4. (ECF No. 85-1). The extra Complaint procedure is even separated from the Grievance procedure by paragraph and by section number, clearly showing that they are not one procedure. (ECF No. 85-1). Moreover, Miller County Defendants' policy SOP 09.01 (ECF No. 85-1) E.4.4.b. "grievances without an original complaint and response shall be promptly returned." (ECF No. 85-1).

Defendant King's Answer (ECF No. 10) lists the affirmative defense of exhaustion,

which he raised in his summary judgment motion. However, viewing all facts in this matter in a light most favorable to Mr. Devine, the nonmovant, we may now examine this first of many disputed areas of law and fact in this matter.

Here, Mr. Devine attempted to obtain grievance forms from various prison officials by verbal request or demand. (See, "Affidavit of Robert Devine"). However, none of Miller County Defendants discovery responses, in interrogatory answers or depositions in the record of this matter show that Defendants offered Mr. Devine the Request for Administrative Remedies grievance form 09.01A. Mr. Devine could not obtain a grievance form because Miller County Defendants' policy prevented his access to a grievance form, despite multiple verbal and written complaints about his attack, his eye injury, the pain it caused him, and the lack of treatment he received that went against medical advice.

Defendant King alleges Mr. Devine should have exhausted the grievance procedure before filing this lawsuit. It is unclear under current law whether Defendant King can even invoke an exhaustion defense when he is only an independent contractor for Miller County Detention Center. Nonetheless, The MCDC grievance procedure, as enforced by Defendant King, when requiring proper exhaustion of administrative remedies and the preceding gatekeeping procedure, stifles progress.

First, the policy is so opaque that no reasonable inmate should be expected to properly comply. Although Mr. Devine used the KIOSK as soon as he was allowed access to it following his psychiatric hold ("Affidavit of Robert Devine"), Defendant King deliberately disregarded Mr. Devine's pleas for help because they were contained in medical requests instead of the complaint forms.

Second, the policy and its method of controlling access to Form 09.01A, the "Request for

Administrative Remedy Form" (ECF No. 85-1) it operates as a simple dead end because jail officials have the procedural power to dismiss, at a whim, any complaint or grievance presented to them. Miller County officials can decline to respond to any complaint they receive. The practical operation of this rule makes the promise of a grievance form illusory.

Third, a plain reading of the text of the PLRA tells us that Congress intended the prison to have one controlling grievance procedure, not one grievance procedure preceded by multiple small procedures which act as a filter for whether an inmate has access to the grievance procedure.

Thereby, the inmates under the care and custody of Miller County Defendants are subject to a heightened grievance procedure. Mr. Devine could not access a grievance form because: (a) his complaints were not answered and returned to him by Miller County Defendants and (b) he was not given grievance form 09.01A ("Affidavit of Robert Devine"). Further, although policy 09.01 (ECF No. 85-1) requires inmates to submit complaints through the KIOSK, the policy is silent on (a) where in the KIOSK the complaint forms are located and (b) how an inmate is to submit a complaint through the KIOSK when they are not given access to the KIOSK because they are confined in a solitary psychiatric isolation cell.

Defendants' grievance procedure prevented Mr. Devine from utilizing the grievance forms and grievance procedure. Mr. Devine is not required to comply with this unavailable grievance procedure. Mr. Devine provided MCDC with the opportunity to redress his complaints when he challenged the compliance with his medication regiment in medical requests, described below. (ECF No. 85-1). Therefore, Mr. Devine complied with the grievance procedure available to him. However, Defendants' argument that the grievance procedure in policy 09.01 precludes this suit is inapplicable, even, outside of a summary judgment analysis, "on the merits." (ECF

No. 86).

Although the PLRA defers to a prison's grievance procedure that an inmate must follow before filing suit, Congress likely did not anticipate that an ordinary inmate could navigate an opaque, multi-step prerequisite procedure, with time-barring limitations outside of the inmate's control, which gatekeeps an inmate's right to any available grievance form.

The PRLA governs inmate litigation and that the PRLA requires a grievance procedure to be followed by the inmate: Not a separate complaint procedure affixed as a prerequisite to the grievance procedure. An undue burden test can also be applied to the constitutionality of Miller County Defendants' policy.

Both Miller County Defendants and Defendant King claim that Mr. Devine's grievances are invalid, not because of content, but because of the title of the form used. (ECF No. 81, 86). As discussed above, to properly exhaust Miller County Defendant's heightened grievance procedure, Mr. Devine would need to show (a) multiple complaints, (b) responses to his complaints by prison officials, (c) his completed grievance forms, and (d) Defendants' action or inaction based on those grievance forms. Note that items (a) and (b) above are separately governed under Miller County Sheriff's policy 09.01 Section E.3 Complaints, not section E.4 Grievances. (ECF No. 85-1).

a. A constitutional challenge exists because of the constraints of Defendants' heightened grievance procedure.

"The salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan*, 549 U.S. 650 (internal quotes omitted). 42 U.S.C. Section 1983 was in effect in January of 2017.

This law gave fair warning to Miller County Defendants and Defendant King that brutally beating, pepper spraying, isolating Plaintiff in a psychiatric cell without providing

8

mental health treatment and denying prescribed medical treatments to Plaintiff would violate his federal statutory and constitutional rights. Yet, they chose those actions anyway.

Miller County Defendants' policy places an undue burden on an inmate because it requires the inmate to submit a complaint, wait for a response, keep the original complaint and response, and then proceed through the grievance process.

This policy is unconstitutional as applied to Robert Devine because it forces Mr. Devine to read the lengthy handbook, jail policy, and navigate the jail's kiosk system, all while struggling to see through swelling around his eyes and lacerations and abrasions on his cornea.[1]

3.    Miller County Sheriff's Office policy SOP 09.01 acts as an unsanctioned, quasi-regulatory filter for inmate grievances.

A preliminary refusal to allow claims, using the PLRA as a pretext, violates an inmate's right to have their complaints heard. *Jones v. Brock*, 549 U.S. 199 (2007). The Supreme Court of the United States explains that "courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns." *Jones* 549 U.S. at 213. Moreover, the high court "unanimously reversed the Court of Appeals [in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993)] for imposing a heightened pleading standard in § 1983 suits against municipalities." *Jones, supra.*

Here, Miller County Defendants appear to use the PLRA as both a sword to slash down an inmate's claims before they can access the grievance procedure and as a shield to defend against litigation if an inmate does in fact move beyond the grievance procedure.

C.    Miller County Defendants' qualified immunity defense fails because such a defense requires an examination of the merits.

"When analyzing a claim of qualified immunity, 'courts may not resolve genuine

---

[1] See, *United States v. Peters*, 9 U.S. (5 Cr.) 115 (1809); *Fletcher v. Peck*, 10 U.S. (6 Cr.) 87 (1810); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819); *Vitek v. Jones*, 445 U.S. 480 (1980); *Sumner v. Shuman*, 483 U.S. 66 (1987).

disputes of fact in favor of the party seeking summary judgment.'" *Williams v. City of Burlington*, No. 21-145 (8th Cir. 2022) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

Pointedly, a court may not make determinations of fact and credibility in assessing whether a party is entitled to qualified immunity. *Williams, supra.* (citing *Ludwig v. Anderson*, 54 F.3d 465, 473 (8th Cir. 1995)). Moreover, the role of a court "at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan* 572 U.S. 650 (internal quotation omitted).

The United States Supreme Court reversed the Court of Appeals for the Fifth Circuit, which affirmed their District Court's grant of summary judgment, because the Fifth Circuit reasoned, in error, "that regardless of whether Cotton used excessive force, he was not entitled to qualified immunity because he did not violate any clearly established right." *Tolan v. Cotton*, 572 U.S. 650 (2014).

The Eighth Circuit also tells us that a plaintiff may overcome qualified immunity if they "plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Jennifer L.M. LeMay, et al v. Michael B. Mays, et al*, 20-2632 (8th Cir. 2021) (published) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

The Eighth Circuit has also declined to "make determinations of fact and credibility in assessing wither a party is entitled to qualified immunity." *Id.* (citing *Ludwig v. Anderson*, 54 F.3d 465, 473 (8th Cir. 1995).

The *Tolan* court discusses, as do Miller County Defendants, a two-pronged test for making a factual determination of qualified immunity. *Id.* However, "under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id.*

Moreover, the Court held in *Pearson v. Callahan*, 555 U.S. 223 (2009) that courts need not follow any particular sequence when administering this test and that "the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson* 555 U.S.

The precedential value of *Tolan* supersedes the Miller County Defendants' assertion that "the individual-capacity claims against the Miller County Defendants fail on the merits." (ECF No. 86 PageID #531). Miller County Defendants erroneously ask this Court to rule on the merits and on their summary judgment motion. But as we have seen, the summary judgment standard and the holding in *Tolan*, *supra*. preclude courts from entering an order for summary judgment by ruling "on the merits" (ECF No. 86) instead of construing the facts in a light most favorable to the non-moving party.

Instead, this Court may look to the Eighth Circuit and analyze "a claim of qualified immunity," but "not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Williams v. City of Burlington*, No. 21-145 (8th Cir. 2022).

Under the *LeMay* test, we should: (a) examine all facts in the record and raised in briefs on summary judgment, (b) construe those facts in the light most favorable to Plaintiff, the nonmovant, and (c) rule on whether Miller County Defendants and Defendant King violated Plaintiff's constitutional or statutory rights and (d) whether those violations, if any, had been clearly established by existing federal statutes or the United States Constitution at the time the violation occurred.

Here, Mr. Devine is the nonmovant and so we must view the facts in a light most favorable to determine whether any genuine issues of material fact exist. When examining the

facts as a whole and viewing Mr. Devine's proffered evidence, if admissible at trial, clear constitutional violations exist.

D.    Separate Defendant Steven King's qualified immunity defense fails because such a defense requires examination of the merits.

The same rules for qualified immunity, as discussed above, apply to this analysis. However, Plaintiff notes that Defendant King has not shown through caselaw that independent contractors may invoke the defense of qualified immunity. Plaintiff stipulates to this hidden assumption for the sake of defending against summary judgment.

Recall that a genuine issue of material fact may not be labeled as undisputed unless no reasonable juror could find for the plaintiff on that fact.

Summary judgment allows us to view Mr. Devine's Medical Records ("Exhibits A, C, E") as accurate depictions of the following injuries: (a) abrasions to his eye, (b) subsequent infections ("Exhibit C"), (c) leading to blindness in one eye ("Exhibit G"), as well as multiple areas of abrasions on his skin ("Exhibit E"). Plaintiff describes further, in subsequent sections of this brief and in his attached affidavit, how other injuries arose from being pepper sprayed and held in psychiatric isolation while incarcerated at Miller County Detention Center. (See, "Affidavit of Robert Devine").

All such requests were made throughout Mr. Devine's Medical requests, to which Defendant King, and occasionally other staff, responded. (ECF No. 85-1). Wadley Medical Records show that even the hospital's timeline includes the fact that "patient was pepper sprayed yesterday (01/22/17)." (See "Exhibit E"). Miller County Defendants and Defendant King still deny that a pepper spraying event occurred to their knowledge. ("ECF No. 81, 86").

The most telling reason that these claims are cemented as genuine issues of material fact is the fact that Defendants have worked so tirelessly to defend themselves on the merits of

Plaintiff's claims. Moreover, interrogatories of Warden Walker (ECF No. 85-3) and Defendant King's statements in his Initial Disclosures show that both sets of defendants either "do not recall" or that they "did not witness" Plaintiff being beaten, pepper sprayed, or placed in psychiatric isolation. Strangely, Mr. Devine's medical records show clearly that he appeared at University of Arkansas Medical School, Wadley Regional Hospital on 01/23/2017 with multiple bruises or abrasions "diffuse" on his body and lacerations on his cornea, which required two separate antibiotic medications, according to UAMS physicians' notes. (See "Exhibit E").

Further, Mr. Devine alleges his booking sheet was created approximately seven to ten days after January 9, 2017. ("Exhibit B"). This booking sheet shows Mr. Devine's bruises and other injuries sustained during the attack he endured at the hands of Miller County Defendants or their subordinates. ("Exhibit B").

The injuries are supported substantially by medical records from UAMS and Wadley Regional Medical Center. (See, "Exhibits C and E"). These documented injuries show that genuine issues of material facts are overtly present because Defendants and Plaintiff disagree on the cause of the injuries and how they occurred; summary judgment is thereby inappropriate.

### IV. Viewed in a light most favorable to Plaintiff, Miller County Defendants and Defendant King showed deliberate indifference to Plaintiff's health, safety, and medical needs because Defendant King knew of and disregarded the excessive risks to his health.

A. Systematic negligence continued under Defendant Walker's watch; Miller County Defendants were deliberately indifferent toward Mr. Devine's assault and resultant injuries.

"The day has passed when an inmate must show a court the scars of torture in order to make out a complaint under § 1983." *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986).

1. Deliberate indifference and force used on an inmate.

The Eighth Circuit has held that a simple assault does not rise to a cause of action under 42 U.S.C. § 1983. *Burton v. Livingston*, 791 F.2d 97 (8th Cir. 1986). This rule remains

precedential "unless actual physical injury results from the assault and the defendant's conduct is especially blameworthy." *Id.* at 99. The specific test laid out by the Eighth Circuit in *Burton*, *supra.*, is whether the conduct of a guard, deputy, sergeant, or warden "impermissibly infringed a protected right of the prisoner" by considering "(1) the need for the guard's action; (2) the relationship between that necessity and the amount of force actually used; (3) the degree of injury to the prisoner's retained rights; and (4) whether the conduct was a good-faith effort to maintain discipline or engaged in maliciously and sadistically for the sole purpose of causing harm." *Burton*, 791 F.2d at 99.

In *Hopson v. Fredericksen*, 961 F.2d 1374 (8th Cir. 1992), the court found the inmate's complaint contained descriptions of a "wanton act of cruelty which, if it occurred, was brutal."

Here, Mr. Devine states in his Affidavit that Miller County Defendants escorted him into the general population of the jail, grabbed him, and he pulled away and shouted, "Get your hands off me!" ("Affidavit of Robert Devine"). Next, officers jumped on him and brutally attacked him. ("Affidavit of Robert Devine").

In viewing the facts in the light most favorable to Mr. Devine by viewing his allegations as true, Miller County Defendants impermissibly infringed on Plaintiff's Due Process rights. First, the need for the guard's actions when he shouted at them was not appropriate in the situation because he was already inside the locked jail area. Second, the relationship between any miniscule necessity to detain Mr. Devine after he pulled his arm away does not at all match the amount of force used which caused multiple abrasions, bruises, and lacerations on Mr. Devine's body and eyes. Third, the degree of injury to Mr. Devine's rights is severe because no inmate should be required to live in fear of an unprovoked brutal beating simply because they do not want to be grabbed at random in a jail. Fourth, the officer's punches, kicks, and other physical

attacks on Mr. Devine, given his age and prior medical needs, does not measure up to a good faith attempt to regain a hold on his arm after he shook off the officer who grabbed him.

Under the *Burton* test, Miller County Defendants' brutal attack on Mr. Devine is especially blameworthy because inmates retain their Fifth and Fourteenth Amendment due process rights even while incarcerated and a brutal beating is a violation of that due process right because it imposes a severe punishment without an opportunity for the inmate to defend himself. Further, actual physical injury resulted from the excessive force used here. Specifically, the attached exhibits "A" and "C" describe the corneal abrasions that the officers' attack caused.

2.  Deliberate indifference as systemic negligence.

In *Woodard, supra.*, the court found that "repeated negligent acts indicating systemic deficiencies in the method of providing medical care may amount to deliberate indifference." *Id.*

Miller County Defendants engaged in the following repeated and systemic acts of negligence: (1) negligently reading and preparing reports that, when acted on, harmed Plaintiff; (2) negligently driving Plaintiff to his eye appointment but only sending one deputy, which caused a double-back and a second round trip, which harmed Plaintiff; (3) negligently allowing Plaintiff to stay in a psychiatric solitary cell, without ensuring that medical staff were providing psychiatric or mental health evaluations or treatment, which harmed Plaintiff; (4) negligently failing to keep logs of Plaintiff's food and fluid intake while he was in a psychiatric hold, which harmed Plaintiff; (5) negligently spraying pepper spray into Plaintiff's eyes, at point-blank range, which harmed Plaintiff.

a.  Negligent reporting.

When Mr. Devine first went into custody on January 9, 2017, in Texarkana, Arkansas, Officer Garret Dixon narrative stated: "I, Officer Garrett Dixon responded to the 2300 East

Street, Miller County Sheriffs Office in reference to a warrant service [and] . . . Devine was booked in without incident." (See, "Exhibit F").[2]

This incorrect date theme continues. A "final disposition of charge report," provided by Miller County Detention Center to Texas Department of Criminal Justice, notes Mr. Devine's arrest date as 01/23/2017. (See, "Exhibit F"). That is the only provided document set with Plaintiff's fingerprints. However, many arrest and booking detail pages document Mr. Devine's arrest and booking at the Miller County Sheriff's office on 01/09/2017. (ECF No. 81-2).

The Texarkana Police Department ("TAPD") is listed as the arresting officer and the agency on Mr. Devine's booking page (ECF No. 81-2). Note also that the first page states that "TAPD advised that inmate was very violent" (ECF No. 81-2), and that "TAPD also advised that the inmate was attempting to spit on and assault officers." (ECF No. 81-2).

Recall that Officer Garrett Dixon stated that "Devine was booked in without incident." ("Exhibit F"). Here, Plaintiff has genuine issues for trial because Miller County Defendants have failed to effectively refute their alleged fact that Mr. Devine was "fighting with several jailers" ("Exhibit F") or that Mr. Devine refused to cooperate in any way. (ECF No. 86, 13).

b.      Negligent scheduling.

On or about 01/23/2017 Miller County Defendants scheduled an appointment for Mr. Devine at UAMS in Texarkana, Arkansas. However, Defendants only sent one guard with Mr. Devine to UAMS. Because of UAMS policies and Miller County Detention Center policies, the driver was not allowed to escort Mr. Devine into his appointment and was forced to reroute back to MCDC to pickup a second guard.

Miller County Defendants owe a duty to inmates they transfer to be efficient and on time.

---

[2] Note that Officer Dixon writes "01-09-2016" on the Narrative page but references the same time and events as 01/09/2017. Dixon does in fact put the correct year of 2017 on the Return portion of the original arrest warrant. Extrinsic evidence makes clear the 2016 date is a scrivener's error.

Defendants breached that duty by failing to recognize that only sending one driver with Mr. Devine would not allow him to attend his medical appointment and would cause further deterioration of his condition or at, very least, take up more of his time in an extra round trip that is normally avoided under reasonable planning and scheduling ventures with in a state or county facility in Arkansas.

c.      Negligent incarceration.

On or about 01/09/2022, Miller County Defendants and Defendant King allowed Mr. Devine to be taken to and held within a psychiatric isolation cell.

Defendants owe a duty, under their policy, to offer psychiatric services or evaluations to inmates that are placed in Miller County Detention Center's psychiatric isolation cells. Defendants breached their duty by failing to send any mental health expert to speak with or otherwise examine Mr. Devine during his isolation.

d.      Negligent logging of food and fluid.

On or about 01/16/2017, Mr. Devine was transported by Miller County to an emergency room for emergency administration of intravenous fluids and proteins. Mr. Devine was unable to eat during his psychiatric hold because his food tasted and smelled like pepper spray. This inability to eat caused Mr. Devine to lose consciousness and exhibit other symptoms of dehydration and starvation.

Defendants have a duty to record food and fluid logs whenever any inmate in their custody is unable to eat healthful amounts. Defendants breached their duty by failing to record and maintain food logs until after Mr. Devine returned from the 01/16/2017 emergency room visit.

e.  Negligent use of pepper-spray.

On or about 01/22/2017, Mr. Devine opened the bean slot in his psychiatric isolation cell door. Plaintiff intended to get the attention of any passerby and so begin shouting for help. Upon information and belief, Miller County Defendants promptly sprayed an entire canister of pepper-spray into Plaintiff's eyes before he could pull away from the bean slot.

Defendants have a duty to use pepper-spray safely and when necessary, under Miller County Sheriff's Office policy. Defendants breached this duty by spraying Mr. Devine as he was calling for help from his isolation cell. Plaintiff posed no risk of harm to Defendants because he was securely behind the locked door of his isolation cell. This pepper-spraying caused increased agitation of the already-existing corneal abrasion.

B.  Defendant King's failure to ensure that Plaintiff received the prescribed doses of antibiotic eyedrops, despite having the knowledge of harm an infection causes, shows only deliberate indifference.

1.  Deliberate indifference and medical care.

Plaintiff agrees with Defendant King's description of the current law surrounding deliberate indifference and medical attention in *County of Sacramento v. Lewis*, 423 U.S. 833 (1988), et seq. However, Defendant King's reliance on *Marksberry v. O'Dea*, 173 F.3d 855 (6th Cir. 1976) is misplaced.

If *Marksberry* is from the Sixth Circuit, the precedent is not binding and is merely persuasive. This Court should not rule based on one party's interpretation of non-binding precedent. In contrast to Defendant King's argument which he supports by citing *Marksberry* (ECF No. 81), this Court's jurisdiction to hear this matter up to trial is soundly established under 42 U.S.C. § 1983. This federal statute protects civil rights and allows injured claimants to pierce qualified immunity to reach their alleged offenders; 42 U.S.C. § 1983 does not "constitutionalize

18

claims which sound in tort law." (ECF No. 81).

Although novel, Defendant King's portrayal of the law falls flat and should not be applied to the facts of this matter.

In the Eighth Circuit, a plaintiff prevails on a deliberate indifference claim by showing: "(1) he suffered objectively serious medical needs and; (2) the prison officials actually knew but deliberately disregarded those needs." *Woodard v. Greenway*, 2010 U.S. Dist. LEXIS 93694, at 24. Also, "to show deliberate indifference, the plaintiff must show prison officials 'knew of, yet disregarded, an excessive risk to his health.'" *Id.* (quoting *Logan v. Clarke*, 119 F.3d 647, 649 (8th Cir. 1997).

Mr. Devine made repeated requests for the necessary four doses of eyedrops per day of one of his prescribed drugs to prevent further infection and deterioration of his eyesight. ("Exhibit C"). He also was not given the second prescribed drug to alleviate discomfort.

In one such request, Mr. Devine stated his "pain is unbearable if I try to keep my eyes open." (ECF No. 81-2). Shockingly, the Miller County Detention Center medical team responded in similar fashion to other requests, with grossly patent disregard for their Hippocratic oath: from S. King, RN, "you've been placed on the list to see the doctor during his next visit." (ECF No. 81-2, Page 31).

The Wadley Regional Medical Center in Texarkana, Texas treated Mr. Devine on the dates of 01/16/2017 and 01/23/2017. ("Exhibit E"). Treatment notes by Tiffany D. Williams at Wadley Regional state that the patient, Mr. Devine, is in the care of Wadley Regional for "being shot with tear gas 01/09/17 and eyeball scratched end of January while in prison." ("Exhibit E").

At a University of Arkansas Medical School, Jones Eye Institute visit, Dr. Sunali Goyal, MD prescribed Mr. Devine the following: (1) erythromycin, with instructions to "place into both

eyes 4 (four) times a day;" and ofloxacin, with instructions to "place 1 drop into both eyes 4 (four) times a day." Both erythromycin and ofloxacin are antibiotics. (See, "Exhibit E").

Mr. Devine's Amended Complaint (ECF No. 6) and the dispute here is over the fact that Defendant King refused to provide the medical treatment as prescribed by physicians at UAMS, as shown by Southern Health Partner's medication logs ("Exhibit D").

Defendant King suggests that Mr. Devine is objecting to the treatment recommendations of Defendant King when, in fact, medical records from UAMS (See, "Exhibit C") show that UAMS physicians, not Defendant King, diagnosed and prescribed treatment for Mr. Devine. Here, Mr. Devine's specific contention and argument in this matter surround Defendant King's decisions to deny Mr. Devine the amount and frequency of eyedrops as prescribed by physicians at UAMS.

Numerous examples of medical requests actually contain the content which Miller County Detention Center requires to be in complaints and grievances: specific facts and circumstances about the inmate's injury and reason for calling the issue to the attention of MCDC staff. Mr. Devine described his attackers, the attack itself, the injury stemming from the attack, the prescribed medication and treatment for eyedrops three times daily as prescribed by Dr. Douglas Appel and other UAMS physicians.

Defendant King knew of the prescription eye drops and the dosage amount required by UAMS physicians because Plaintiff informed Defendant King of these requirements in his medical requests. (ECF No. 85-1). Medication logs from Southern Health Partners ("Exhibit D") show medications given to Mr. Devine during the months of January, excluding February because that record was not included in the evidence, March, and April of 2017. These logs show clearly that Mr. Devine did not receive medication as prescribed by physicians at UAMS.

Defendant King had fair warning that his consistent denial of the proper medication doses was a deliberately indifferent violation of Mr. Devine's constitutional right to receive adequate medical treatment at an incarcerating facility. Further, Defendant King's and Miller County Defendants' reliance on qualified immunity is in error, even outside of summary judgment on a determination of the merits, because their conduct does in fact violate a clearly established statutory or constitutional right, contrary to Miller County Defendants' assertions (ECF No. 86), and Defendant King's assertions (ECF No. 81).

Defendant King was made aware of the prescribed antibiotic eyedrops prescribed to Mr. Devine. Upon information and belief, Defendant King received copies of the prescription and the medication with instructions from UAMS physicians who treated Mr. Devine. Despite this knowledge, Defendant King refused to provide Mr. Devine with the necessary four drops per day, which would have prevented an infection. Defendant King is a trained nurse and should know the dangers of an infection and bacterial growth inside the cornea.

Defendant King asserts (ECF No. 81) that Mr. Devine's eye was fully healed before he left Miller County Jail custody; however, when plaintiff arrived at the facility for the Texas Department of Criminal Justice, Dr. Appel examined Mr. Devine and found an infection in one of his eyes. ("Exhibit A").

On February 22, 2017, Defendant King received a fax from Wiggins Eye Center containing Mr. Devine's medical records and prescribed treatment. (See "Exhibit G"). Defendant King also knew of medications because Mr. Devine used the jail's KIOSK to submit medical requests describing the medications and recommended dose per day. (ECF No. 85-1). Defendant King responded to nearly every request. (ECF No. 85-1). Despite plaintiff's description of his nearly unbearable pain, Defendant King deliberately disregarded the excessive risk to the health

of Mr. Devine's eye.

2.     Constitutional rights violations.

First, it is unclear whether Defendant incorrectly cited caselaw in his brief supporting summary judgment (ECF No. 81 PageID #: 291), or whether he misread the case. Including the citation as written, Defendant King states "A plaintiff must establish a clear violation of a constitutional right to prevail upon a Section 1983 claim. *McMillan v. Schweiker*, 697 F.2d 213, 215 (6th Cir. 1983)." (ECF No. 81 PageID #: 291).

Plaintiff's counsel has been unable to locate the case with that exact citation. Plaintiff's counsel was able to locate the case citable as: *McMillian v. Schweiker*, 697 F.2d 215 (8th Cir. 1983). One possible explanation is that Defendant's citation contains harmless scrivener's errors in "McMillan" and "6th" and instead meant "McMillian" and "8th." Plaintiff's analysis operates under the assumption that the correct case is the case found by Plaintiff's counsel. If this is incorrect, Plaintiff requests Defendant King provide a copy to his counsel for review.

Second, upon review of *McMillian v. Schweiker*, 697 F.2d 215 (8th Cir. 1983), Defendant's assertion that the case stands for the supposition that plaintiffs must establish a clear violation of a constitutional right to prevail upon a Section 1983 claim is in error. A quick keyword search reveals that the body of the opinion does not contain the words: "constitutional," "plaintiff," "clear violation," "violation," or "section 1983." The *McMillian* case involves litigation surrounding the decision by Health and Human Services to deny disability insurance. *Id.*

Any injury that Miller County Defendants caused through excessive force and that Defendant King exacerbated or caused by failing to follow medical advice is a violation of federal law. 42 U.S.C. § 1983 and his Due Process rights under the Fifth Amendment as

incorporated to the States through the Fourteenth. Moreover, despite suggestions in Defendants' collective motions for summary judgments, Mr. Devine need not prove his injury was permanent or life threatening. 42 U.S.C. § 1983.

## VI.    Policy & Auxiliary Disputes of Fact

A.    <u>Defendant King's ad hominem is unconvincing.</u>

Defendant King asserts that he is entitled to summary judgment as a matter of law because "Plaintiff has not, and cannot, offer any proof of any alleged violation, other than his self-serving testimony." (ECF No. 81 PageID #: 300).

Aside from being grammatically incorrect and syntactically confusing, Defendant King's conclusion contrasts with existing summary judgment standards as discussed above.

First, once a summary judgment motion is filed, the burden shifts to the nonmovant to demonstrate that admissible evidence is available or will be available at trial to support the claims alleged in a complaint. Fed. R. Civ. P. Rule 56. This means that summary judgment cannot be ruled on until after a nonmovant files a response to a motion for summary judgment. Rather, the summary judgment standard is forward-looking.

Further, Defendant King's ECF No. 81 assertion that Mr. Devine's testimony is "self-serving" reads as vitriolic and is assuming facts not in evidence in the record of this matter. See, Federal Rules of Evidence R. 104. Moreover, as a matter of course, nearly all testimony given by any plaintiff, and sometimes by any defendant, in a lawsuit is self-serving, specifically because a plaintiff only files a lawsuit to serve their self-interests by recovering from injuries they allege to be caused by a defendant. Finally, this ad-hominem has no basis in law and should be disregarded. See, Federal Rules of Evidence R. 701.

B.    Plaintiff's medical requests and other evidence in the record stand opposite Defendant King's arguments in ECF No. 81 PageID #: 293-296.

Defendant King states "at all times relevant, Plaintiff had access to a kiosk system within MCDC by which he could place health service request or sick calls." (ECF No. 81). This assertion is directly countered by the admission that Plaintiff was held in a solitary cell (ECF No. 6). For a week and thereafter, Mr. Devine was taken to the emergency room and required intravenous fluid drips (See "Exhibit C").

Defendant King states that "Plaintiff did not place a sick call with regard to this alleged eye injury." (ECF No. 81). This assertion is directly countered by Medical Requests submitted by Mr. Devine, submitted as exhibits attached with this filing. These records show that Mr. Devine discussed his eye injuries with Defendant King.

C.    Defendant King's brief supporting summary judgment fails to support his allegation that Mr. Devine's eye injuries were self-inflicted.

Defendant King twice notes that Mr. Devine had caused a self-inflicted eye wound (ECF No. 81). Notably, in one section, Defendant states that Miller County Jail staff reported that "Plaintiff was bleeding out of his eye" and so was taken to "the emergency room," where he was treated with antibiotics and pain medication (ECF No. 81). Defendant described this event and Plaintiff's bleeding eye twice as being a self-inflicted injury but fails to describe how the injury could be self-inflicted. Defendants' new medical expert, Dr. Jessica Trichel, also makes a conclusory statement the injury appeared self-inflicted, though no facts are available in the record and no demonstrative evidence, such as images of the exact injury, are available for Plaintiff to hire medical experts to refute the unsupported claim.

It is apparent from Dr. Trichel's citations to facts that the basis of her conclusion is lacking: If Dr. Trichel saw only the facts as presented by Defendant King or Miller County

Defendants in their motions and affidavits for summary judgment, her expert opinion does not hold weight or credibility.

In contrast, the examination of Mr. Devine's eye conducted by Dr. Appel at the Texas Department of Criminal Justice shows substantial unhealed injuries to Mr. Devine's eye, with noticeable signs of infection. ("Exhibit E").

The above examples constitute genuine issues of material fact requiring continued litigation or settlement negotiation, but not summary judgment.

D. <u>Defendant King's personal medical opinions are not credible because, although he is a registered nurse, he is not an optometrist or ophthalmologist.</u>

·Plaintiff generally and specifically disputes the conclusions drawn in Defendant King's summary judgment brief (ECF No. 81, PageID #: 296, 297) because Defendant King does not have a doctoral medical degree, is not licensed to practice medicine, and cannot give medical advice in Arkansas. Ark. Code Ann. § 17-95-401.

E. <u>This court should consider Plaintiff's previously pro se litigant status.</u>

"When dealing with summary judgment procedures, the technical rigor is inappropriate where . . . uninformed prisoners are involved." *Woodard v. Greenway*, 2010 U.S. Dist. LEXIS 93694, at 20 (quoting *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir. 1985)). "A pro se complaint must be liberally construed and can be dismissed only if it appears to a certainty that the complainant can prove no set of facts which would entitle him to relief. *Burton v. Livingston*, 791 F.2d 97 (8th Cir. 1986).

"Courts must remain sensitive, however, to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and the Eighth Circuit has explicitly disapproved of summary dismissal of prisoner pro se claims without regard for these special problems." *Woodard v. Greenway*, 2010 U.S. Dist. LEXIS 93694, at 19, 20 (citing

*Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980).

In *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001), the appeals court reversed a magistrate's order denying a motion to reinstate because the court should have viewed the pro se litigant's motion to reopen an already closed case as a initiating a new civil action on the date the motion was filed, and even waived filing fees.

Mr. Devine filed the original complaint in this matter pro se. (ECF No. 1). Not surprisingly, the Amended Complaint (ECF No. 6) was also filed pro se. Mr. Devine proceeded pro se through much of the motion practice in this case and should not be held to the standard of an attorney. This Court should follow the Eighth Circuit and give due weight to Mr. Devine's previous pro se status and also draw reasonable inferences in his favor because he is the nonmovant. Summary judgment resulting in dismissal of his case is not an appropriate remedy here.

## VII. Conclusion

In their motions and supporting briefs and affidavits, Defendant King and Miller County Defendants are asking this Court to move beyond the Federal Rules of Civil Procedure R. 56 and grant summary judgment for (1) defenses that cannot be decided on summary judgment, (2) defenses that are inapplicable when raised for the first time at summary judgment, and (3) defenses that present facts in evidence as unreliable and in turn present opposing views of underlying facts.

Mr. Devine prays this Court follow precedent set down by the Supreme Court of the United States and the United States Court of Appeals for Eighth Circuit and apply the fact-specific rules for a § 1983 claim, first brought by a pro se litigant, as determinable on summary judgment, and deny the two summary judgment motions brought by Defendants.

RESPECTFULLY SUBMITTED
ROBERT DEVINE

DeeAnna Weimar
Co-Counsel for Plaintiff
Weimar Law Offices, PA
P.O. Box 58, Greenwood, AR 72936
479-996-0887 | weimarlaw@hotmail.com

Alexander Wyrick, ABN 2020285
Alexander L. Wyrick Law Firm, PLLC
P.O. Box 472, Greenwood, AR 72936
479-252-5164 | alexander@wyrick.legal

## CERTIFICATE OF SERVICE

I certify that I have on this date, served a true and correct copy of the foregoing Motion on the parties registered to this case in eflex:

DeeAnna Weimar
Co-Counsel for Plaintiff
Weimar Law Offices, PA
P.O. Box 58, Greenwood, AR 72936
479-996-0887 | weimarlaw@hotmail.com