IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ROBERT DEVINE                                                        PLAINTIFF

v.                              Civil No. 4:18-CV-04156-SOH-BAB

WARDEN JEFFIE WALKER, SERGEANT                    DEFENDANTS
ALLEN SANDERS, SHERIFF RUNION and
NURSE KING

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983.  Pursuant to the provisions

of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District

Judge, referred this case to the undersigned for the purpose of making a Report and

Recommendation.

Currently before the Court are Motions for Summary Judgment by Defendant King (ECF

No. 80), and Defendants Walker, Sanders and Runion ("Miller County Defendants").  (ECF No.

84).

## I.  BACKGROUND

### Procedural Background

Plaintiff filed his Complaint on November 15, 2018, and an Amended Complaint on

December 3, 2018.  (ECF Nos. 1, 6).  At the time of filing for both Complaints, Plaintiff was

incarcerated in the Jester 3 Unit of the Texas Department of Criminal Justice.  (ECF Nos. 1 at 3,

23; 6 at 2, 26).  Plaintiff's claims center on his incarceration in the Miller County Detention Center

("MCDC") between January 9, 2017, and his release to the Texas Department of Criminal Justice

on May 5, 2017.  (ECF No. 6).

1

For his first claim, Plaintiff alleges he was subjected to the use of excessive force when he was booked into MCDC on January 9, 2017.  (ECF No. 6 at 6).  He names Defendant Sanders, Cornell, Hennessy, Barnes, and John Doe Officers 1-3 for this claim.  (*Id*.).  Plaintiff alleges that the John Doe officers held him while Defendants Sanders and Cornell hit him in the face and body prior to placing him in "suicide suit" and placing him in a solitary psychiatric cell.  (*Id*. at 7-8).  He alleges he suffered cuts on his face and an abrasion on his eye from the use of force.  (*Id*. at 7).  He further alleges that Defendant Hennessy sprayed him in the eyes with pepper-spray on January 12, 2017.  (*Id*. at 9).  Plaintiff alleges he was diagnosed with a corneal abrasion.  (*Id*. at 11).  As his official capacity portion of this claim, Plaintiff alleges Defendants violated MCDC policies.  (*Id*. at 14).

For his second claim, Plaintiff alleges that he was denied medical care for his eyes between March 3, 2017, and May 5, 2017.  (*Id*. at 14).  He names Defendant Walker and King for this claim. (*Id*.).  Plaintiff does not mention the corneal abrasion specifically on this claim, but does reference erythromycin eye ointment, eyedrops, and Tramadol.  (*Id*. at 11, 15).  Thus, while Plaintiff's complaint for this claim is disjointed and difficult to follow, the undersigned will infer that he is complaining of a lack of care for the corneal abrasion he alleges he received on January 9, 2022.[1]  (*Id*. at 15-20).  Plaintiff alleges his eyes are "forever damaged" and require future medical treatment that the Texas Department of Criminal Justice does not provide.  (*Id*. at 20).  As his official capacity portion of this claim, Plaintiff alleges Defendants violated MCDC and the health care provider policy, and made medical decisions based on cost instead of policy.  (*Id*. at 21).

---

[1] Plaintiff also lists other eye conditions and/or diagnoses that will be detailed in the timeline below for clarity.

For his third claim, Plaintiff alleges that Defendant Runion failed to train or supervise MCDC staff, resulting in the excessive force incident on January 9, 2022. (*Id*. at 21-22). Plaintiff also appears to allege that the MCDC pill-window policy in insufficient. (*Id*. at 23). As his official capacity portion of this claim, Plaintiff alleges Defendant Runion permits "widespread violence." He cites a "history" of lawsuits and deaths at MCDC but provides no specific dates or other information. (*Id*. at 25).

Plaintiff proceeds against all Defendants in both their individual and official capacities. (*Id*. at 6, 14, 21). He seeks compensatory and punitive damages. (*Id*. at 25).

The undersigned entered a Service Order on December 7, 2018. (ECF No. 7). Defendant King filed his Answer on December 24, 2018. (ECF No. 10). The Miller County Defendants filed their Answer on January 2, 2019. (ECF No. 13). The Initial Scheduling Order was entered on January 8, 2019. (ECF No. 16). On March 4, 2019, Defendants Hennesy, Barnes, and Cornell were dismissed as parties in the case because Plaintiff had failed to provide accurate information for service of these Defendants. (ECF No. 27).

On April 29, 2019, the Miller County Defendants filed a Motion to Stay the case. (ECF No. 28). As grounds, the Miller County Defendants cited difficulty and expense in scheduling Plaintiff's deposition because he was incarcerated in a Texas Department of Criminal Justice unit for a ten-year sentence. (*Id*.). They asked that the case be stayed until Plaintiff was released or transferred to a correctional facility in Arkansas. (*Id*.). The stay was granted on May 3, 2019, and Plaintiff's case was administratively terminated. (ECF No. 30).

Plaintiff appealed the stay to the Eighth Circuit on August 22, 2019. (ECF No. 35). On November 7, 2019, the Eighth Circuit appointed attorney Christopher Swiecicki to represent Plaintiff for his appeal. (ECF No. 44). On February 26, 2021, the Eighth Circuit dismissed

3

Plaintiff's appeal for lack of jurisdiction.  (ECF No. 46).  Mr. Swiecicki agreed to continue his representation of Plaintiff, and the undersigned *sua sponte* appointed him to represent Plaintiff on March 19, 2021.  (ECF No. 49).  Mr. Swiecicki filed his Notice of Appearance on March 23, 2021.  (ECF No. 50).  On June 17, 2021, the Miller County Defendants filed a Motion asking that the prior stay be considered and affirmed by Chief Judge Susan O. Hickey in accordance with the Eighth Circuit opinion.  (ECF No. 53).  On June 18, 2021, Defendant King also filed a Motion endorsing the Miller County motion and asking for the stay to be considered and affirmed by Chief Judge Hickey.  (ECF No. 55).  On August 16, 2021, Chief Judge Hickey noted the increased availability and use of video communication for litigation proceedings during the COVID-19 pandemic and vacated the stay.  (ECF No. 63).

On October 20, 2021, the undersigned entered an Order setting a case management hearing to be held by video teleconference on October 28, 2021.  (ECF No. 72).  After the hearing, an Amended Scheduling Order was entered.  (ECF No. 74).  On January 11, 2022, Mr. Swiecicki filed a Motion to Withdraw as attorney of record, stating he could no longer represent Plaintiff due to Plaintiff's conduct.  (ECF No. 75).  Mr. Swiecicki's motion was granted on January 13, 2022.[2] (ECF No. 76).  The Order detailed Plaintiff's actions in the case, which included a threat directed at Mr. Swiecicki's family.[3]  (*Id*.).  Plaintiff was further warned that:

> he should not contact the Court directly or attempt to speak to any member of the Court's staff, except as is necessary to file pleadings with the Clerk of Court.  The Court can and will offer no advice or direction to Plaintiff regarding this case. Continued communication by Plaintiff with the Court directly will result in sanctions including the possible dismissal of Plaintiff's case for failing to follow the Rules and Order of this Court.

---

[2] The undersigned commends Mr. Swiecicki's professionalism in representing Plaintiff at his deposition on January 23, 2022, after the Court had specifically stated in its Order that he was not required to do so.  (ECF No. 85-3 at 2).

[3] Because Plaintiff's actions were described at length in the Order, they will not be duplicated here.

(*Id*.).  The undersigned further noted that Plaintiff was no longer incarcerated at the time of the Order and was free to seek private counsel of his own choosing.  (*Id*.).

On March 14, 2022, the undersigned entered a Report and Recommendation which recommended dismissal of the Doe Defendants because the deadline to do so in the Amended Scheduling Order had passed, and Plaintiff had failed to identify any Doe Defendant.  (ECF No. 79).  The Report and Recommendation was adopted on June 15, 2022.  (ECF No. 99).

## Summary Judgment Motions

Defendant King filed his Motion for Summary Judgment on March 22, 2022.  (ECF No. 80).  Defendant King argues summary judgment in his favor is appropriate because he was not deliberately indifferent to Plaintiff's eye injury and the medical records from the University of Arkansas for the Medical Sciences ('UAMS') indicate that Plaintiff's corneal abrasion, which occurred on January 23, 2017, was completely healed as of March 3, 2017.  (*Id*.).  He further argues that Plaintiff failed to exhaust his administrative remedies regarding his corneal abrasion, he cannot be held vicariously liable for any action or inaction of other medical personnel or jail staff, and Plaintiff could not state any custom or policy which he believes is unconstitutional or was a moving force behind any harm he allegedly suffered.  (*Id*.).  On March 28, 2022, the undersigned entered an Order directing Plaintiff to submit his Summary Judgment Response by April 18, 2022.  (ECF No. 83).

The Miller County Defendants filed their Motion for Summary Judgment on March 29, 2022.  (ECF No. 84).  They argue that summary judgment in their favor is appropriate because there is no medical evidence of any injury caused by the alleged excessive force incident and no medical evidence that MCDC failed to provide medical care.  (ECF No. 84 at 2).  They further argue that Plaintiff failed to exhaust his administrative remedies regarding the alleged excessive

force or denial of medical care. (*Id*.). They argue the failure to train/supervise claim against Defendant Runion must fail because there is no evidence supporting the requisite elements of such a claim. (*Id*. at 3). Finally, they argue they are entitled to qualified immunity for individual capacity claims, and there is no evidence of an unconstitutional custom or policy to support an official capacity claim. (*Id*. at 3). On April 4, 2022, the undersigned entered an Order directing Plaintiff to file his summary judgment Response by April 25, 2022. (ECF No. 88).

On April 6, 2022, Plaintiff filed a Motion for Extension, asking for 60-day extension to file his summary judgment Responses. He also asked to appointment of counsel. (ECF No. 89). Plaintiff's request for counsel was denied, and he was given an additional 30 days to submit his Responses. (ECF No. 90). On May 13, 2022, Ms. DeeAnna Weimar filed her Notice of Appearance as Counsel for Plaintiff and requested an additional extension to file the required summary judgment Responses. (ECF Nos. 91, 92). The Motion was granted on May 16, 2022, and Plaintiff was given until June 14, 2022, to file his Responses. (ECF No. 93).

Plaintiff timely filed two separate Responses to the Motions. (ECF No. 94, 95). A document labelled as a "Combined Brief in Opposition to Both Summary Judgment Motions" was signed by Ms. Weimar, as well as Alexander Wyrick, identified as co-counsel. (ECF No. 97). A document labelled "Response to King's Statement of Undisputed Facts" was also filed on June 14, 2022. (ECF No. 96). A document labelled "Affidavit of Disputed Facts" was filed the same day.[4] (ECF No. 98).

Plaintiff does not dispute that he failed to exhaust any grievances concerning his claims of excessive force or lack of medical care for his corneal abrasion. Instead, Plaintiff argues the MCDC's "heightened" grievance process was not an available remedy because it was a three-step

---

[4] This "affidavit" is signed as a pleading by Plaintiff's attorneys. Further, it is not signed by Plaintiff, notarized, or sworn under penalty of perjury.

process, MCDC staff did not answer and return his Complaints, MCDC policy prevented him from receiving a paper grievance form, and the MCDC policy does not clearly state where the forms are located on the KIOSK system.  He argues the policy acts as a dead-end because grievances which do not follow MCDC policy requirements are returned to the inmate.  (ECF No. 97 at 5-7).  Plaintiff also argues that his medical requests placed Defendants on notice of his issues and should be accepted as a form of grievance exhaustion.  (ECF No. 97 at 7).  He further argues that Defendants are not entitled to qualified immunity and Defendant King failed to ensure that Plaintiff receive medication prescribed by outside providers for his corneal abrasion.[5]  Plaintiff raised several other arguments which were without merit and will not be addressed.[6]

The Miller County Defendants filed a Reply on June 20, 2022.  (ECF No. 100).  They note that the "Affidavit of Disputed Facts" does not appear to admissible, as required by Federal Rule of Civil Procedure 56.  (*Id*. 1).  They further argue that, even allowing the affidavit to stand, nothing in it changes the resolution of the case, as Plaintiff failed to meet proof with proof.  (*Id*.).  They further point out at least one clear factual error in the affidavit, as stated in footnote 1.  (*Id*.).  Defendant King filed his Reply on June 21, 2022.  (ECF No. 101).  He adopted the Miller County Defendants' Reply *in toto* and incorporated it as if set forth fully in his Reply.  (*Id*.).

### Timeline of Events

Plaintiff was booked into MCDC on January 9, 2017.  (ECF No. 81-2 at 1).  He was placed on a "psych/suicide" watch by medical staff.  (ECF No. 85-2 at 1).  Plaintiff testified in his

---

[5] Plaintiff erroneously characterizes the corneal abrasion as an eye infection.  (ECF No. 97 at 4, 18).
[6] For example, Plaintiff argues the Defendants waived their right to assert the affirmative defense of exhaustion because they waited until the summary judgment motion to raise it.  In their Reply, the Miller County Defendants correctly note that in the Eighth Circuit, the defense of exhaustion need only be plead and proved prior to trial.  *See Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001).  This standard in incorporated into the § 1983 case scheduling order for this District, which requires that "[a]ny defense based upon qualified immunity or failure to exhaust administrative remedies must be raised in the summary judgment motion or will be considered waived." (ECF Nos. 16 at 3; 74 at 2).  Defendants did precisely as they should under both Eighth Circuit precedent and the Orders of this Court; the defense of administrative exhaustion was not waived.

deposition that he was in the psychiatric watch cell for 8 days, and was pepper-sprayed in the face on January 12, 2017.  (ECF No. 85-3 at 27, 54, 60)  Plaintiff was seen in the MCDC infirmary on January 16, 2017, for pitting edema in both ankles.  He was transported to the Wadley Regional Medical Center emergency room because he would not cooperate with MCDC nursing staff.  (ECF No. 81-1 at 2).  While in the Wadley emergency room he was treated for hypertension, nausea, and vomiting.  (*Id*.).  The emergency room record states:

> The patient presents to the emergency department with paranoia.  Onset: the symptoms/episode began/occurred 3 day(s) ago.  Associated signs and symptoms: Pertinent positives; nausea.  Pertinent negatives: vomiting.  Severity of symptoms: in the emergency department symptoms are unchanged.  The patient has not recently seen a physician.  The patient is an inmate from a local jail.  He states he is worried that people are trying to poison him.  He states he hasn't eaten or had anything to drink in three days.  Pt reports nausea, but no vomiting and swelling to his feet.  Pt. has a hx or Hep C.  **No other complaints were stated**.

(ECF No. 97-5 at 17) (emphasis added).  There is no mention of an eye injury or cuts on his face in the Wadley medical record for that day.  (ECF Nos. 81-2; 81-5 at 2; 97-5 at 17)  Plaintiff did not complain of eye issues while in the emergency room.  (ECF No. 97-5 at 17).

On January 23, 2017, Plaintiff was seen by MCDC nursing staff due to a staff report that Plaintiff was bleeding out of his left eye.  (ECF No. 81-1 at 2).  He was sent back to the Wadley emergency room for evaluation.  (*Id*.).  He reported pain in both eyes, with the left eye worse.  He reported rubbing his eyes with toilet paper and being pepper-sprayed.  (ECF No. 97-5 at 3).  He was diagnosed with a small corneal abrasion in each eye.  (ECF No. 97-5 at 4).  He was prescribed sulfacetamide drops and Ultram.  (ECF No. 97-5 at 3).

On January 23, 2017, Plaintiff placed his first sick call request at MCDC.  (ECF No. 81-1 at 2).  He complained of problems with his eyes.  (*Id*.).  He was seen at the Wiggins Eye Center on February 22, 2017.  (*Id*.).  The eye center referred Plaintiff to an eye specialist, and an appointment was made for Plaintiff to be seen at the University of Arkansas for Medical Sciences

("UAMS") eye clinic the next day, on February 23, 2017. (*Id*.). His admission diagnosis was pain in his left eye. His final diagnosis was a corneal abrasion, although there seems to be some difference in the record diagnosis as to which eye. (ECF No. 97-3 at 1). Defendant King's medical expert, Dr. Trichel, interpreted the diagnosis for the corneal abrasion as being in the left eye. (ECF No. 81-5 at 2). He was prescribed ofloxacin drops, erythromycin ointment, and tramadol. (ECF No. 97-3 at 1-22). The UAMS record also indicated he had undergone LASIX surgery in both eyes, and had cataracts in both eyes. (ECF No. 81-5 at 2; 97-3 at 3-8). He was scheduled to return to UAMS on March 3, 2017. (ECF No. 81-5 at 2).

Plaintiff was seen at UAMS on March 3, 2017. (ECF No. 81-5 at 2; 97-3 at 21). The medical notes state: "Corneal Abrasion healed. Stop Erythromycin ointment." (ECF No. 97-3 at 21). Plaintiff was diagnosed with erythematous lids and ocular rosacea. He was prescribed doxycycline tablets and warm compresses. (ECF No. 81-5 at 2; 97-3 at 21-24). He was scheduled to return in 6 weeks. His vision was corrected to 20/25 in both eyes and the cornea was clear. (ECF No. 81-5 at 2).

Dr. Trichel emphasizes in her opinion that "[i]f the abrasion is healed and the cornea is clear, there is no permanent damage received to the eye and the patient will not have pain in relation this. (ECF No. 81-5 at 3). She further notes that "ocular rosacea does not interfere with, is not a result of trauma, or cause of any vision loss in this case." (*Id*.).

Plaintiff provided medical records from the Texas Department of Criminal Justice ophthalmology clinic, where he was seen on May 14, 2017. (ECF No. 97-1 at 1). He was diagnosed with map-dot-fingerprint corneal dystrophy in both eyes, status post-LASIX in both eyes, blepharitis of upper and lower eyelids in both eyes, and ocular rosacea in both eyes. (*Id*.). He was prescribed eye drops. (*Id*.). As Plaintiff did not provide a medical expert opinion, the

Court researched whether map-dot fingerprint dystrophy could be caused by physical trauma to the eye.  Corneal dystrophies, which include map-dot-fingerprint dystrophy, are a class of rare genetic diseases that affect the cornea and can impair vision over time.[7]  These dystrophies may cause corneal erosions.  (*Id*.).

### Miller County Detention Center Grievance Policy and Handbook

Plaintiff and all Defendants agree that the MCDC policy controlling administrative exhaustion at the time of Plaintiff's incarceration was "Inmate Rights, Complaints & Grievances SOP 09.01."  Both attached copies of the policy.  (ECF Nos. 85-1 at 6-12; 97-10).  The policy outlines a three-step grievance process which starts with a written complaint as the informal stage of the process, proceeds to a formal grievance, and ends with a grievance appeal.  (ECF No. 85-1 at 6).  A written complaint is to be submitted through the KIOSK in the inmate housing area.  (*Id*. at 6, 9).  Inmates are informed at the beginning of the policy that "[a] grievance can only be made subsequent to filing a written complaint and receiving a written response."  (*Id*. at 6).  If an inmate wishes to proceed to the formal grievance stage, the grievance must be submitted on a "Request for Administrative Remedy Form, jail form 09.01A."  This form is available in hard copy from a shift officer or supervisor.  (*Id*. at 9).  It is also available on the KIOSK.  (ECF No. 85-1 at 2; 86 at 5).  The form is then routed to either the Facility Warden or the Risk Management Officer, where it is given a case number and logged.  (*Id*. at 11).  If the inmate is not satisfied with the grievance response, he or she may appeal the decision.  (*Id*. at 11-12).  The appeal requires the inmate to simply write that they wish to appeal on the Inmate Acknowledgment Form that they receive with the decision.  (*Id*. at 11).  The inmate has 15 days after the grievance decision to appeal.  (*Id*.).

---

[7] https://www.webmd.com/eye-health/corneal-dystrophies (last accessed Dec. 13, 2022).

Grievances and appeals which have already been answered do not require an additional response, and repetitive grievances or appeals will be returned to the inmate. (ECF No. 85-1 at 9). A grievance that is not accompanied by the original informal complaint and response will be returned to the inmate. (ECF No. 85-1 at 10). A grievance which contains more than one issue, does not follow the prescribed format, seeks a remedy for an issue beyond the facility's control, contains profanity (unless quoting), or does not have an original copy of the complaint on file will be returned to the inmate. (ECF No. 85-1 at 10-11).

The Miller County Defendants also submitted a copy of the Inmate Handbook. (ECF No. 85-1 at 33-39). On page 2 of the Handbook, inmates are informed that there is a difference between a request and a grievance. (*Id*. at 34) They are also informed that a grievance must be placed in writing on a grievance form. (*Id*.). They are further informed that an inmate request must be on a Request Form, while an inmate grievance must be on a Grievance Form. (*Id*. at 35).

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson*

11

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  ANALYSIS

#### A.      Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") mandates exhaustion of available administrative remedies before an inmate files suit.  Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances."  *Id.* at 219.  "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules."  *Id.* at 218 (internal quotation marks and citation omitted).  The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id.*

The Eighth Circuit Court of Appeals has recognized only two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures, or (2) when the officials themselves fail to comply with the grievance procedures.  *See*

*Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (explaining a prisoner is only required to exhaust those administrative remedies that are "available" and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

Plaintiff does not dispute that he failed to exhaust any MCDC grievances concerning his claims of excessive force and denial of medical care for his corneal abrasion.  Nor do any of his arguments support a claim that he is eligible for an exception to the PLRA exhaustion requirement.

Plaintiff argues the MCDC grievance process was not an available remedy because inmates are required to follow the policy in order to submit complaints and grievances, it is a three-step process, MCDC staff did not answer and return his complaints, MCDC policy prevented him from receiving a paper grievance form, and the MCDC policy does not clearly state where the forms are located on the KIOSK system.  Plaintiff also argues that his medical requests placed Defendants on notice of his issues and should be accepted as an alternative form of grievance exhaustion.

The mere fact that the MCDC process contains three steps and requires inmates to follow a set of very typical grievance rules does not render the process so difficult as to render it unavailable.  Plaintiff appears to be arguing that his situation meets the standard of unavailability detailed in *Ross v. Blake*, 136 S. Ct. 1850, 1853-54 (2016).  In *Ross*, the Supreme Court recognized at least three circumstances where an administrative process is not "capable of use" and therefore unavailable to exhaust: (1) where "it operates as a simple dead end—with officers unable or consistently unwilling to provide *any* relief to aggrieved inmates"; (2) where the "administrative scheme" is "so opaque" as to be practically "incapable of use"; and (3) where "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019) (citing *Ross*, 136 S. Ct. at 1858-60) (internal quotations and citations omitted).

13

The situation in *Ross* is quite distinguishable from this case.   In *Ross*, an inmate complaining of an excessive force incident was attempting to navigate the tension between the Maryland prison system's Internal Investigation Unit (IIU) process for prison staff misconduct and its Administrative Remedy Procedure (ARP).  *Ross*, 136 S. Ct. at 1855-62.  The case begins with Inmate Blake being taken to the segregation unit by guards Madigan and Ross.  During that move, Madigan punched Blake repeatedly while Ross held the handcuffed Blake.  *Id*. at 1855.  When Blake reported the incident, prison staff believed Madigan to be at fault, and referred Madigan's role in the incident to the IIU.  *Id*.  The IIU subsequently issued a report condemning Madigan's actions, and he was forced to resign.  *Id*.  Inmate Blake then brought a § 1983 lawsuit against both Madigan and Ross, winning an award against Madigan.  *Id*.  Ross, however, raised the affirmative defense that Plaintiff had not exhausted any administrative remedies against him using the ARP process.  Blake argued that he thought the IIU investigation served as a substitute for ARP.  *Id*.

The Maryland District Court rejected Blake's argument and dismissed the case against Ross for failure to exhaust.  *Id*.  The Fourth Circuit Court of Appeals reversed, and Ross appealed to the Supreme Court.  *Id*. at 1855-56.  Discovery in the case revealed that inmates who attempted to pursue an ARP grievance after an IIU referral were routinely told that "no further action would be taken through the ARP process because the matter had been referred to the [IIU]."  *Id*. at 1861.  Justice Kagan further noted that inmates who refused to accept this jurisdictional denial and appealed the "no further action" finding had at times received a ruling on the merits with no discussion of the ARP/IIU issue.  *Id*. at 1862.  As a result, the case was remanded for further consideration as to "whether Blake had 'available' remedies to exhaust."  *Id*.

No such tension between two prison reporting systems exists here.  The mere fact that Plaintiff must follow the correct procedure to file an informal complaint, a formal grievance, and

then an appeal to exhaust his administrative remedies does not render the process so opaque as to be unavailable.  Indeed, the grievance procedure for the Arkansas Division of Correction, which has not been found to be unavailable to inmates despite regular challenges, is also a three-step process with considerably more precise requirements and formality than that of the MCDC process.  *See, e.g.*, *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019) (citing *Ross*, 136 S. Ct. at 1858-60); *Klingensmith v. DeBoer*, Case No. 6:19-cv-06126 (W.D. Ark. Sept. 13, 2022).

Plaintiff argues that the medical requests for sick calls he submitted should have been sufficient to exhaust his administrative remedies.  The MCDC grievance policy and Inmate Handbook makes it clear to inmates that requests and grievances are not procedurally or substantively the same, and nothing in the MCDC grievance policy contemplates the use of a request – medical or otherwise – to satisfy the grievance process.  *See Jones*, 549 U.S. at 218 ("it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion").

Plaintiff argues MCDC staff did not answer and return his complaints.  Plaintiff failed, however, to provide any copies of complaints which had been submitted and ignored at the informal first step.  Thus, his argument is contradicted by the summary judgment record.  *See*, *Scott*, 550 at 380.  (a court should not use facts blatantly contradicted by the record for purposes of ruling on a motion for summary judgment).

Plaintiff argues that MCDC policy prevented him from receiving a paper grievance form, and the MCDC policy does not clearly state where the grievance forms are located on the KIOSK system.  These arguments are without merit.  Plaintiff first notes that he was in a psychiatric cell for 8 days and not able to access the KIOSK to submit a complaint.  (ECF No. 97).  Accepting this allegation as true, there is nothing in the summary judgment record indicating Plaintiff submitted a complaint or a grievance in the KIOSK after those 8 days had passed.  The summary judgment

record indicates he successfully submitted 22 medical requests for a sick call on the KIOSK, so there can be no argument that he was unable to access or use the KIOSK after those 8 days in the psychiatric cell.  As for his argument that the KIOSK was too complicated for him to find the digital grievance form, the MCDC policy also permits inmates to request a hard-copy or paper grievance form.  There is also no evidence in the summary judgment record that he submitted a request for a grievance form on the KIOSK, and as noted above, he was well-versed in submitting requests on the KIOSK.

For these reasons, there is no material fact in dispute concerning PLRA exhaustion for Plaintiff's claims of excessive force and denial of medical care, and all Defendants are entitled to summary judgment as a matter of law on these claims.[8]

### B.      Failure to Train or Supervise

In determining whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry.  First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth.  *Ashcroft v. Iqbal,* 566 U.S. 662 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements."  *Id.* at 678.  Second, the Court must determine whether the complaint states a plausible claim for relief.  *Id.* at 679.  A plaintiff is required to plead facts that show more than the "mere possibility of misconduct."  *Id.*

"When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending action, the supervisor is entitled to

---

[8] The summary judgment record, including Defendant Walker's affidavit, also indicate that Plaintiff submitted no complaints or grievances on any topic during the relevant period.  (ECF No. 85-1 at 2).  Thus, it appears that Plaintiff also failed to exhaust his administrative remedies for his claim of failure to train or supervise against Defendant Runion.  The Miller County Defendants did not specifically address this in their Brief, however, and instead argued this claim on the merits.  (ECF No. 86 at 7, 10-11).

qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Marsh v. Phelps County,* 902 F.3d 745, (8th Cir. 2018) quoting *S.M. v. Krigbaum,* 808 F.3d 335, 340 (8th Cir. 2015).

Here, the summary judgment record is clear that Defendant Runion had no direct involvement with Plaintiff, or any issues related to Plaintiff, at any time during Plaintiff's 2017 incarceration in MCDC.  There is no evidence in the summary judgment record of the existence of any unconstitutional customs at MCDC, or that Plaintiff submitted any complaints or grievances concerning alleged constitutional violations at MCDC.  Not only has Plaintiff failed to state any facts to support his legal conclusions that Defendant Runion failed to train, supervise, or discipline MCDC staff, but Defendant Runion did not receive any notice of a pattern of unconstitutional violations at MCDC.  He is, therefore, is entitled to qualified immunity.

Accordingly, the Court finds Defendant Runion is entitled to summary judgment on this claim.

## IV.  CONCLUSION

Accordingly, it is recommended that the Motions for Summary Judgment by Defendant King (ECF No. 80), and Defendants Walker, Sanders and Runion ("Miller County Defendants"). (ECF No. 84) be GRANTED and Plaintiff's claims for excessive force and denial of medical care should be DISMISSED WITHOUT PREJUDICE,[9] while his claim for failure to train or supervise should be DISMISSED WITH PREJUDICE.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely**

---

[9] Claims that are dismissed for failure to exhaust administrative remedies should be dismissed without prejudice. *See Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003).

**objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **19th day of December 2022**.

/s/ *Barry A. Bryant*
_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE